CLARK v. PORTER, Appellant.

Division One, May 14, 1901.

1. **Appellate Jurisdiction:** FEDERAL CONSTITUTION. In order to give the Supreme Court appellate jurisdiction on the ground that the case involves the construction of the Constitution of the United States, it must affirmatively appear from the record that the protection of that Constitution was invoked in the trial court and denied by that court to the losing party there. And where the only question raised by the pleadings or instructions or by any proceeding had in the trial court, is the question as to fraud in the procurement of the notes sued on and the failure of the consideration therefor, there is no Federal question involved.

2. ————: ————: STATUTE: TIME OF TAKING EFFECT. A contention that a statute of Arkansas did not take effect until after the notes in suit were executed, involves the applicability of the statute to the suit, but does not involve the constitutionality of the act.

Clark v. Porter.

Transferred from St. Louis Court of Appeals.

REMANDED TO ST. LOUIS COURT OF APPEALS.

*Charles B. Stuart* and *Adiel Sherwood* for appellant.

*W. P. Larew* for respondent.

MARSHALL, J.—This is an action upon two negotiable promissory notes for five hundred dollars each, with eight per cent interest, dated May 1, 1891, executed at Muscogee, Indian Territory, by the defendant, to the order of R. L. Duvall, by him indorsed before maturity to the plaintiff, and payable at the Merchants Bank, in Fort Smith, Arkansas. The petition is in the usual form.

The answer is a general denial, with two special defenses: first, that the notes were procured by fraud, and that there has been a total failure of consideration; and, second, that the notes were given for a purchase of the right to use a certain patent within the Indian Territory, Oklahoma, and a portion of Arkansas, which Duvall and his associates claimed to own, and under the laws of Arkansas, they were subject to all the defenses that could have been made against them if they had remained in Duvall's hands.

The fraud charged in the first special defense is, that he and his associates represented to the defendant and others that they owned the right to operate and to form companies to operate a certain patent for the successful construction and growth of a certain hedge fence, theretofore known to the people as a common osage orange fence; Duvall induced defendant and others to subscribe for stock in a company to be organized by him for such purpose, and caused defendant to execute the notes sued on in payment for his subscription to the stock of

the company upon a representation and agreement that the notes were not to be negotiated and that the business would be so profitable that none or only a small part of the notes would ever have to be paid; that Duvall and associates never owned any such patent or right under such patent; nor was the growing of an osage orange fence patentable; that the plaintiff took the notes with full knowledge of all these facts and hence she is not a bona fide purchaser for value.

The reply is a general denial of the special defenses set up in the answer, with two special matters of avoidance thereof. First, that in January, 1891, she purchased for value and without notice, before their maturity, three promissory notes for one thousand dollars each, executed by defendant to the order of R. L. Duvall, and by him indorsed to George B. Graham; that in April or May, 1891, "in order to carry out and effectuate, as she is informed and believes to be true, a compromise adjustment of certain business transactions between the defendant and the said Duvall (of which she has no knowledge and to which she was in nowise a party and in noway related), the defendant undertook and did execute and deliver to the said Duvall his three certain promissory notes of date May 1, 1891, and of which the notes here sued on are two, in order that he might use the same in taking up and obtaining the surrender of the first three mentioned notes so executed and delivered by the defendant as aforesaid, in order that the said Duvall could, in pursuance of such compromise adjustment as aforesaid, surrender the same to the defendant; that thereafter, in pursuance of the said agreement between the said Duvall and the defendant and for the purpose thereof, said Duvall offered her in consideration of the sum of five hundred dollars and in further consideration that she would surrender the said notes of the defendant, so held by her and acquired by her as aforesaid, to him to be delivered to defend-

ant as aforesaid, and herein sued on, which said offer or prop-osition, she thereupon in good faith accepted and thereupon and as cotemporaneous acts, she surrendered to the said Duvall, the said three notes of the defendant, so owned, acquired and held by her as aforesaid, to be surrendered by him to the defendant as aforesaid, and he delivered to her, among such new notes, the notes sued on in this cause, duly indorsed by him before the maturity thereof, and immediately thereafter delivered, as she is informed and believes and charges to be true, the three said notes for one thousand dollars each, surrendered by the said Duvall as aforesaid to the said defendant, who since then has been and now is in possession of same as she avers.　Second. For reply to the second paragraph of the amended answer herein, plaintiff says it is not true and she therefore denies that the notes herein sued on were given for the purchase or payment of the right to use a certain patent as in said second paragraph alleged.　Plaintiff says it is true that said notes are payable in said State of Arkansas, but she denies that under the laws in force in said State they are liable in the hands of this plaintiff to all of the defenses, which the makers thereof have against the original payee, as defendant therein alleges; she denies that said note had its inception in fraud or that the consideration for same has failed."

There is no substantial conflict in the evidence as to the origin or consideration for the notes sued on.　Duvall repre-sented to the defendant and others in the Indian Territory that he owned a certain patent for an osage orange fence, and in-duced persons to subscribe for stock in a proposed company to operate the patent, and to give their notes in payment for their stock subscriptions upon his promise not to transfer the notes, but to furnish the working capital for making the enterprise a success.　No company was organized and no fences con-structed, but the notes were negotiated.　The defendant sub-

scribed for three thousand dollars worth of stock, and gave three notes of $1,000 each therefor. Thereafter, the plaintiff, who had lately received an inheritance mostly in the shape of five per cent bonds from the East, was looking for a home in Missouri. She met Graham, an accomplice of Duvall, on a train. He induced her to buy notes so executed, defendant's among them, to the amount of five thousand dollars, she paying therefor thirty-five hundred dollars. She did not know anything about the solvency of any of the makers of the notes, and says she had never seen a promissory note before, but as her bonds drew only five per cent and as the notes drew eight per cent, and as she was getting the notes for fifteen hundred dollars less than their face value, she made the exchange and purchase. She was afterwards approached by Graham and told that there was trouble about the matter, the people were dissatisfied about the company and that there would probably be a lawsuit over it, and asked to lend her notes to Duvall so he could compromise the matter with the makers of the notes. She refused at first, but when Duvall himself saw her about it, and promised to give her $500 and the three new notes of the defendant for $500 each, she consented to the arrangement, delivered the three one thousand dollar notes to Duvall to be by him surrendered to the defendant, and thereafter accepted in lieu thereof the three five hundred dollar notes made by the defendant, of which the two notes sued on herein were a part. This compromise or adjustment was caused by the people, whom Duvall had induced to subscribe for stock originally, raising a row about the fraud he had perpetrated on them, in not organizing any company or building any hedge fences, and in negotiating the notes they had given him. The compromise consisted of Duvall returning the original notes, and letting the subscribers off with one-half of their subscriptions, taking new notes for the other half, and organizing a

company under the laws of Arkansas.   No patent osage orange hedge fences were ever constructed, however.

On the ninth of April, 1891, the statutes of Arkansas were amended so as to provide as follows:

"Sec. 492.   Nothing in the preceding section shall apply to a bill of exchange or negotiable note, transferred in good faith and for value before maturity, but such instrument shall be governed by the rules of the law merchant concerning commercial and negotiable paper.   Provided, the payee and drawer in all notes, drafts and bills of exchange executed or drawn in payment of any patent right or patent right territory shall be permitted to make all defenses against any assignee, indorser, holder or purchaser of such note, draft or bill of exchange that could have been made against the original payee or drawee whether such note, draft or bill of exchange be assigned or transferred before maturity or not.

"Sec. 493.   Any vendor of any patent right machine, implement, substance or instrument of any kind or character whatsoever, when the said vendor of the same effects the sale of the same to any citizen of this State on a credit, and takes any character of negotiable instrument, in payment of the same, the said negotiable instrument shall be executed on a printed form, and show upon its face that it was executed in consideration of a patent machine, implement, substance or instrument, as the case may be, and no person shall be considered an innocent holder of the same, though he may have given value for the same before maturity, and the maker thereof may make defense to the collection of the same in the hands of any holder of said negotiable instrument, and all such notes not showing on their face for what they were given shall be absolutely void."

It does not appear from this record whether the patent osage orange hedge fence scheme induced the adoption of this

statute by the State of Arkansas or whether its passage at that time was only a happy coincidence.

Upon the facts so appearing the trial court of its own motion instructed the jury as follows:

"If the jury believe from the evidence that said notes were bought by plaintiff, before maturity, in the due course of business, for value and in good faith on her part, she is entitled to recover and they will find for her, unless from the evidence you believe that the notes sued on were given by defendants in payment of any patent right, or patented machine, implement, substance or instrument of any kind.

"If from the evidence you believe that the notes sued on were given by defendant in payment of any patent right, or patented machine, implement, substance or instrument of any kind, then your verdict should be for defendant.

"If your verdict is for the plaintiff under the above instruction, you will find for her in the sum of one thousand dollars with interest thereon from May 1, 1891, at eight per cent to date. If your verdict is for the defendant, you will simply so state in your verdict.

"The court further instructs you that the burden of proving that the said notes were given for a patent right or patented device or substance is upon the defendant, that is, that the defendant must prove by a preponderance of the evidence to your satisfaction that the notes were thus given; and by preponderance of the evidence is meant that in your judgment the testimony to sustain the defendant's said position outweighs in point of credibility the testimony to the contrary."

The defendant saved proper exception to this charge.

The court refused the following instructions asked by the defendant:

"Now comes the defendant and asks the court to give the following instruction: In this case it appears from the evi-

dence that the notes herein sued on were for a patent right and such being the case, under the laws applicable to said notes, the plaintiff herein is not a bona fide purchaser and the defendant may make any defense to said notes that he could have made against the original payee, Duvall; and if you find that the consideration for said notes has totally failed, you will find for defendant.

"And now comes this defendant and moves the court to instruct the jury to return a verdict for the defendant on the whole case.

"If you believe that the notes herein sued on were given for a patent right, you will find for the defendant."

Which the court refused and defendant objected and excepted to the action of the court at the time.

The jury found for the plaintiff in the sum of $1,561.33. After proper steps the defendant appealed to the St. Louis Court of Appeals. That court certified the case to this court on the ground that the case involved the construction of the Constitution of the United States, and fell, therefore, within the appellate jurisdiction of this court.

## I.

In order to give this court appellate jurisdiction on the ground that the case involves the construction of the Constitution of the United States, it must affirmatively appear from the record that the protection of the Federal Constitution was invoked in the trial court and denied by that court to the losing party before that forum. [Vaughn v. Railroad, 145 Mo. l. c. 61; Shewalter v. Railroad, 152 Mo. l. c. 551.]

The record in this case nowhere shows a compliance with this rule. The Federal Constitution was not relied upon, invoked or referred to in the pleadings or instructions or in any of the proceedings in the circuit court, by the parties, the attorneys or the court, nor was any protection afforded by that

instrument denied to either party by that court. Cases must be tried in the appellate courts on the issues raised and decided in the trial courts.

The reply first denies the fraud raised in the answer, and second, denies that under the laws then in force in Arkansas the defendant is entitled to go into the question of the notes having been given in payment for a patent right, and the particular underlying contention of the plaintiff is that the Act of April 9, 1891, did not take effect under the Constitution of Arkansas until ninety days after the adjournment of the session of the Legislature of that year, and, hence, it was not in force on May 1, 1891, when the notes sued on were executed.

This is a very different question from the validity of the act under the Constitution of the United States. It raises a question as to the applicability of the act to the case at bar, but does not question the constitutionality of the act.

The trial court, as shown by the instruction given, decided this contention against the plaintiff, and the plaintiff acquiesced in that ruling, by not excepting to the ruling and by not appealing therefrom. Hence, the plaintiff can not be heard, in an appellate court, to question the correctness of the ruling. As the ruling was in favor of the defendant he can not be heard to complain. This question is not, therefore, in this state of the record, open to review, even if it could be said to involve a consideration of the constitutionality of the act.

The only other question raised by the pleadings or instructions or by any proceeding had in the case in the trial court, is the question as to the fraud in the procurement of the notes and the failure of consideration therefor. No Federal right is involved in the decision of this question. Hence, this court has no jurisdiction of the cause.

For these reasons the case is remanded to the St. Louis Court of Appeals. All concur.